**SIGNED THIS: April 23, 2010**

_____
**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LYNN L. COLE, | ) | No.  09-83182 |
| | ) | |
| Debtor. | ) | |

## O P I N I O N

Before the Court is the motion filed by Nancy J. Gargula, the United States Trustee

(U.S.TRUSTEE) for Region 10, to dismiss the Chapter 7 case filed by the Debtor, Lynn L.

Cole (DEBTOR), pursuant to Sections 707(b)(1) and (b)(2) of the Bankruptcy Code.  The

question before the Court is whether an above-median income Chapter 7 debtor, who is

single with no dependents, is entitled to claim an operating expense and an ownership

deduction for a second vehicle.

The facts are not in dispute.  The DEBTOR, who is single with no dependents, filed

a Chapter 7 petition in bankruptcy on September 30, 2009.  In her bankruptcy schedules,

the DEBTOR listed her home, valued at $100,000, subject to a mortgage of $99,559.  In

addition to exempt personal property consisting of household goods and furnishings, bank

accounts, apparel and miscellaneous jewelry and an individual retirement account having

a value of $2,500, the DEBTOR listed two vehicles having a combined value of $11,050.  She

owns a 2004 Mercury Sable valued at $5,375, subject to a lien in the amount of $4,968.53

and a 2004 Dodge Stratus valued at $5,675, which she owns free and clear.  The DEBTOR

listed unsecured, nonpriority debts totaling $63,322.08.  The DEBTOR, an assistant physical

therapist, listed her net monthly income, after payroll deductions, as $3,795.40.  Schedule

J listed monthly expenses of $3,779.59, including a payment of $202 on the Mercury Sable,

leaving monthly net income of $15.81.

Along with her petition, the DEBTOR completed Form 22A, "Chapter 7 Statement

of Current Monthly Income and Means-Test Calculation," which calculates monthly

disposable income following the means test formula set forth in Section 707(b)(2).  Her

Form 22A reflects annualized income of $62,256.96, which is above the median income of

$47,355, for a household of one in Illinois.  Accordingly, DEBTOR was required to complete

the remainder of the form.  The DEBTOR took a vehicle operation expense of $366, the

maximum allowed by the IRS Local Standards for two vehicles, and a vehicle ownership

expense of $489 for each of her two vehicles.[1]   As calculated by the DEBTOR, the

presumption of abuse did not arise because her current monthly income of $5,188.08 was

less than the total of allowable deductions of $5,296.73, resulting in a negative monthly

disposable income.

---

[1]The DEBTOR lists the $489 ownership expense for the Mercury Sable and subtracts the amount of average monthly payment of $82.81, resulting in a deduction of $406.19.  The monthly payment of $82.81 is taken as a payment on secured debt in Subpart C of Part V of Form 22C.

Upon review of the DEBTOR'S petition, the U.S. TRUSTEE filed this motion to dismiss the case as abusive under Section 707(b)(2), based on a presumption of abuse under the means test. The U.S. TRUSTEE contends that the DEBTOR, a single person with no dependents, is not entitled to claim two vehicle operation expenses and two vehicle ownership expenses under Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code.[2] The U.S. TRUSTEE contends that if these deductions are disallowed, the DEBTOR'S monthly income would increase by $672, giving rise to the presumption of abuse. A hearing was held on the motion to dismiss on January 12, 2010. The parties agree that whether the presumption of abuse arose depends on whether the DEBTOR is entitled to expense allowances for vehicle operating and ownership costs on her second vehicle.

A court may dismiss a Chapter 7 case filed by a debtor whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of that chapter. 11 U.S.C. § 707(b). Section 707(b), added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), prescribes two alternative standards to determine whether the granting of Chapter 7 relief would be an abuse. Section 707(b)(2) implements a mathematical formula, commonly referred to as the "means test," which calculates the debtor's current monthly income for the six months preceding the month of the bankruptcy filing and reduces that amount by certain allowances for living expenses and payment of secured and priority debts. A presumption of abuse is created if the debtor's net disposable income over sixty months

---

[2]Based on the DEBTOR'S 2008 federal income tax refund, the U.S. TRUSTEE also contended that the DEBTOR was overwithholding income taxes in the amount of $41.10 per month. To the DEBTOR'S benefit, the calculation submitted by the U.S. TRUSTEE increased the unreimbursed healthcare expense from $106.67 to $166.67; the secured debt deduction for the first mortgage payment from $728 to $946.92; and added a Chapter 13 administrative expense of $29.50.

exceeds the lesser of: (1) twenty-five percent of the debtor's nonpriority unsecured claims

or $6,575, whichever is greater; or (2) $10,950.  Once the presumption arises, the debtor

must demonstrate special circumstances sufficient to rebut the presumption, in order to

avoid dismissal.  11 U.S.C. § 707(b)(2)(B).  Section 707(b)(3) provides that a court may still

dismiss a case, in the absence of a presumption of abuse or where the presumption is

rebutted, based upon the particular circumstances of the case, including whether the

petition was filed in bad faith.  The U.S. TRUSTEE'S motion is premised only on Section

707(b)(2).

> Section 707(b)(2)(A)(ii)(I)  defines the debtor's monthly expenses as:
>
> > The debtor's monthly expenses shall be the debtor's applicable
> > monthly expense amounts specified under the National Standards and Local
> > Standards, and the debtor's actual monthly expenses for the categories
> > specified as Other Necessary Expenses issued by the Internal Revenue
> > Service for the area in which the debtor resides, as in effect on the date of the
> > order for relief, for the debtor, the dependents of the debtor, and the spouse
> > of the debtor in a joint case, if the spouse is not otherwise a dependent.

The National and Local Standards referred to are derived from the Internal Revenue

Service Collection Financial Standards, which are used to assess a taxpayer's ability to pay

a delinquent tax debt.  The National Standards cover allowable expenses for food,

housekeeping supplies, apparel and services, personal care products and services and other

miscellaneous expenses.   The Local Standards for transportation consist of two

components: one related to the costs associated with financing vehicle acquisition, which

the IRS refers to as "ownership costs," and a second component associated with the costs

of vehicle operation, referred to as "operating costs."[3]  At the time the DEBTOR filed her

---

[3]In addition to the transportation standards, the Collection Financial Standards include a Local Standard for housing
and utilities.

4

petition, the standardized transportation ownership cost was $489 for the first car and $489

for the second car; and the operating costs were $183 for one car and $366 for two cars.

The Seventh Circuit Court of Appeals interpreted this provision in *In re Ross-Tousey*,

549 F.3d 1148 (7th Cir. 2008), addressing the issue of whether an above-median income

Chapter 7 debtor is entitled to claim a deduction on Form 22A for a transportation

ownership expense when there is no monthly car payment or lease obligation owing on the

vehicle. Considering both the "plain language" approach and the "IRM" (Internal Revenue

Manual) approach, the court adopted the former, holding that the vehicle ownership

deduction which is "applicable" to a debtor is the one that corresponds to the debtor's

geographic region and number of cars, regardless of whether that deduction is an actual

expense which the debtor incurs. *Id*. at 1157 -58.

The U.S. TRUSTEE argues that *Ross-Tousey's* ruling favoring the plain language view

extends to an explanatory provision in the Local Standards for transportation which

provides that "[a] single taxpayer is normally allowed one automobile," asserting that the

statement, being equally "plain," controls here.[4]  That result would, however, be contrary

to the court's ruling.  The court in *Ross-Tousey* made clear its rejection of the IRS' Internal

Revenue Manual and its methodology.  The court explained:

> As an initial matter, [this provision] makes reference only to the "amounts
> specified" in the Local Standards; the statute does not incorporate the IRM
> or the Financial Analysis Handbook, or even refer to them. . . . The legislative

---

[4]The full statement provides:

> The ownership costs provide maximum allowances for the lease or purchase of up to two
> automobiles if allowed as a necessary expense.  A single taxpayer is normally allowed one
> automobile.

history of [the provision] confirms that the provision's silence with regard to the IRM and IRS methodology was deliberate.

* * *

Because the statute incorporates only the "amounts" of the Local Standards and does not incorporate IRM procedures or methodology, and because the legislative history of the statute indicates that Congress intentionally omitted any reference to IRM financial analysis, we believe that using IRM methodology in conducting the means test is misguided. . . .

In addition to the fact that neither the statutory text nor history support using IRM methods in the means test, there are also practical reasons why it is inappropriate to look to the IRM, namely that the substantial discretion allowed to a revenue officer under the IRM is inconsistent with the purpose of the means test to adopt a uniform, bright-line test that eliminates judicial discretion.

549 F.3d at 1159-60.

The U.S. TRUSTEE also argues that because the purpose in establishing the means test was to ensure that debtors repay creditors the maximum they can afford, that allowing a single debtor to deduct expenses for two vehicles would frustrate that purpose. Referencing the Seventh Circuit's decision in *In re Turner*, 574 F.3d 349 (7th Cir. 2009), the U.S. TRUSTEE attempts to discern the actual expenses the DEBTOR likely incurs in owning two vehicles, concluding that permitting her to deduct the standardized operating expenses for two vehicles would result in the claiming of "phantom" expenses.[5] The U.S. TRUSTEE'S foray into the realm of reasonable and necessary living expenses is a turn down the wrong road in this Chapter 7 case.[6]

---

[5] No one would dispute the U.S. TRUSTEE'S assertion that the DEBTOR obviously can only drive one vehicle at a time and that the doubling of certain allotments such as gasoline consumption and parking would result in a boon for the DEBTOR.

[6] Given the availability of another automobile, the U.S. TRUSTEE characterizes the DEBTOR'S use of the Dodge Stratus as an unnecessary living expense and a "luxury." Assuming the argument's validity, its only relevance would be to an objection raised under Section 707(b)(3), based on the totality of the DEBTOR'S circumstances. That, of course, was not raised by the U.S. TRUSTEE here, and the DEBTOR'S Chapter 7 filing can hardly be claimed to be an abuse of the

As this Court noted in *In re Stenstrom*, 2010 WL 1253976 (Bankr.C.D.Ill. 2010), the court's ruling in *Turner*, that monthly payments on collateral which the debtor intends to surrender could not be deducted in determining the debtor's projected disposable income, and its characterization of those expenses as "phantom," is confined to Chapter 13 cases. Indeed, the very use of standardized national and local deductions for housing and transportation, the heart of the means test, necessarily results in expense amounts that are not "actual" for most every debtor. It is a purely objective test, based on a snapshot of the debtor's financial circumstances on the date of the bankruptcy filing, designed to eliminate judicial discretion. And its application is purely mechanical, barring the concerns that the U.S. TRUSTEE raises here.

This Court agrees with the analysis and result reached by the court in *In re Zaporski*, 366 B.R. 758 (Bankr.E.D.Mich. 2007), also a Chapter 7 case. Tackling the issues of whether a single debtor was entitled to claim an ownership expense on two vehicles, both of which were unencumbered and whether he could claim the operating expense on each vehicle, the court answered both questions in the affirmative. Mirroring the rationale of *Ross-Tousey* on the first issue, the court considered it determinative as to the second issue as well, holding that the means test does not incorporate the standards of the Internal Revenue Manual or the IRS Collection Financial Standards, but only imports the applicable monthly expense amounts contained under the National and Local Standards. The court concluded that the debtor was entitled to claim an operating expense for two vehicles

---

Bankruptcy Code.

based solely on his undisputed ownership, because the means test form "invites it and the statute allows it." *Id.* at 768-69. *See also In re Barrett*, 371 B.R. 860, 864 (Bankr.S.D.Ill. 2007) (size of debtor's household and its impact on the necessity of having a second vehicle do not factor into standardized transportation expense); *In re Comstock,* 389 B.R. 888 (Bankr. N.D.Cal. 2008) (unmarried Chapter 7 debtor allowed to deduct expenses for two vehicles).

For the foregoing reasons, the Motion to Dismiss filed by the U.S. TRUSTEE will be denied. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###